2015 IL App (3d) 130725

Opinion filed April 15, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | Appeal No. 3-13-0725 |
| v. | ) ) | Circuit No. 09-CF-606 |
| BRADLEY M. SCHLOTT, | ) ) | Honorable Amy Bertani-Tomczak, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Presiding Justice McDade dissented, with opinion.

**OPINION**

¶ 1        Defendant, Bradley M. Schlott, faced charges for one count of attempted first degree

murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)) and one count of aggravated domestic battery

(720 ILCS 5/12-3.3 (West 2008)).  The court granted defendant's pretrial motion *in limine*

seeking to exclude portions of defendant's responses to questions posed by the 911 operator.  In

addition, the trial court granted defendant's request to exclude the State's DNA evidence, which

the State submitted for analysis by the crime lab within weeks of the scheduled jury trial but

promptly disclosed to the defense as ongoing discovery. The State appeals the pretrial rulings. We reverse both rulings.

¶ 2                                    BACKGROUND

¶ 3        The State indicted defendant for attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)) and aggravated domestic battery (720 ILCS 5/12-3.3 (West 2008)) arising out of an incident which occurred on March 12, 2009. The indictment alleged defendant struck or slashed Kimberly Hurschik about the neck with a knife on that date.

¶ 4        Defendant was arraigned on April 8, 2009. Although a written order does not appear in the record, the docket sheet indicates the trial court ordered discovery pursuant to Supreme Court Rules 412 and 413 (Ill. S. Ct. R. 412 (eff. Mar. 1, 2001); R. 413 (eff. July 1, 1982)). According to the record, the State was ordered to comply with that discovery schedule by April 22, 2009. Due to numerous pending procedural issues and requests for continuances by both sides, the jury trial was not scheduled to begin until 2013, nearly four years after the initial arraignment.

¶ 5        On July 27, 2011, defendant filed a pretrial motion to suppress a knife from evidence. In addition, defendant's motion also sought the suppression of certain statements defendant provided to police officers identifying the same knife as the actual knife used to injure the victim. The court did not rule on defendant's motion to suppress until June 8, 2012. The court granted defendant's request to suppress his statements identifying the knife as the knife used to inflict the victim's injuries. However, the court denied defendant's request to prevent the State from introducing the knife itself as evidence based on the inevitable discovery rule.

¶ 6        One year later, on August 13, 2013, the court scheduled the jury trial to begin on September 19, 2013. Two weeks after the court set the jury trial date, defendant filed a pretrial motion *in limine* on August 30, 2013. This motion *in limine* sought to exclude portions of the

2

tape recordings of two 911 calls initiated by defendant based on *Crawford v. Washington*, 541

U.S. 36 (2004).

¶ 7　　　　The State filed a response to defendant's *Crawford* motion.  In addition, the State also

filed its own motion *in limine* seeking a ruling by the court allowing the State to introduce the

transcripts of the recorded 911 calls initiated by defendant seeking help for the stabbing victim.

The State's motion *in limine* included attached transcripts of the 911 calls.

¶ 8　　　　On August 30, 2013, the same day that defendant filed his motion *in limine*, the

prosecutor assigned to the case discovered that the knife had not been previously submitted to

the crime lab for DNA analysis.  An assistant State's Attorney personally visited defense counsel

on September 3 or 4 and informed defense counsel of the name of the crime lab technician

conducting the analysis.  On September 5 or 6, the State tendered the completed crime lab report

to the defense before the hearing occurred on the pending cross-motions *in limine*.

¶ 9　　　　The hearing on the cross-motions *in limine* concerning defendant's 911 calls took place

on September 10, 2013, in anticipation of the scheduled jury trial date of September 19, 2013.

On September 12, 2013, the trial court ruled on the pending cross-motions *in limine*.  The court

granted, in part, and denied, in part, both motions.  Specifically, the court ordered that the jury

would not be allowed to consider the portion of the recording.  The trial court reasoned that the

911 operator's questions went beyond the emergency purpose.

¶ 10　　　　Those portions of the 911 recording redacted by the court are highlighted, for the reader's

convenience, below.  The relevant transcript reads as follows:

"Transcript of Joliet 9-1-1 tape

March 12, 2009

(Call placed by Male)

RE: 09-0312005318

00:00-1:10

DISPATCH: Joliet *9-1-1*

(Male) CALLER: I need help.  1901 Prairie Ridge Drive.  I need an ambulance.
Help!

DISPATCH: What's wrong though?

(Male) CALLER: I've got a girlfriend who's hurt real bad.  She might bleed to
death.  Hurry up.

DISPATCH: What's going on?

(Male) CALLER: 1901 Prairie Ridge Drive . . .

DISPATCH: 1901 Prairie Ridge Drive.  You've got to tell me what the problem
is.

(Male) CALLER: She's cut and bleeding!

DISPATCH: Cut what?

(Male) CALLER: Profusely!

DISPTACH: Where at?

(Male) CALLER: In her — right between her arm and her chest! Hurry up! I need
help!  I need help! I need help!

DISPATCH: Okay, where is she bleeding from?  What happened?

4

(Male) CALLER: I'm telling you!  She is cut profusely between her arm and her chest!

DISPATCH: Okay, how did it happen?

(Male) CALLER: It's a long story.  I need help!

DISPATCH: Okay, someone else is dispatching them, okay?  *I need you to tell me what happened.*

*(Male) CALLER: It's not important.  Just send someone.*

*DISPATCH: It is important, Sir!  We're going to be sending police and fire out there.  You need to tell me what happened.*

*(Male) CALLER: We had a fight.*

*DISPATCH: Okay, and what happened that she's cut between her arm and her chest now?*

*(Male) CALLER: She got cut.*

*DISPATCH: Did you cut her?*

(Male) CALLER: I need help!

DISPATCH: What's your name?

(Male) CALLER: (Hangs up — dial tone heard)"  (Emphasis added.)

¶ 11     On September 16, 2013, the State filed a motion requesting the trial court to reconsider the ruling regarding the 911 call.  On that same day, defendant filed a motion to bar the State from introducing evidence concerning the DNA results as a discovery sanction.  The defense asserted that any production of discovery 10 days prior to the start of trial was unreasonable and constituted a discovery violation.

¶ 12        The court conducted a combined hearing on the State's motion to reconsider the court's

ruling concerning defendant's 911 call together with the hearing on defendant's separate motion

for discovery sanctions.  During the combined hearing, the State explained the reason the State

did not submit the knife to the crime lab for analysis before August of 2013.  According to the

prosecutor, after the court's June 8, 2012, decision to suppress defendant's statement to police

about the knife, the State determined the knife should be submitted to the crime lab to determine

if the victim's or defendant's blood was present on the knife in order to link the knife to the

alleged assault.  However, the State explained that the need to have the knife tested had been

"lost in transition" between the two prosecutors working on the case.

¶ 13        On September 17, 2013, the court granted defendant's motion for a discovery sanction

and barred the State from introducing the DNA test results from evidence.  In addition, on the

same date, the court denied the State's request to reconsider the court's ruling striking

defendant's responses to the 911 operator.

¶ 14        The State filed a notice of appeal and a certificate of substantial impairment to proceed to

trial.  In this interlocutory appeal, the State challenges: (1) the court's order granting defendant's

motion to bar the DNA results from evidence as a sanction for the State's discovery violation;

and (2) the court's order suppressing certain portions of the 911 tape under *Crawford*.

¶ 15                                            ANALYSIS

¶ 16                                    I. Discovery Sanctions

¶ 17        The State argues that the exclusion of the DNA results was, under the circumstances, an

excessive sanction for the purported untimely discovery.  Defendant claims that the State's

tendering of the lab report on the DNA found on the knife in such close proximity to trial

6

constituted a discovery violation. Defendant maintains that the trial court's sanction for this violation, excluding the evidence, did not constitute an abuse of discretion.

¶ 18    As a threshold matter, we first examine whether a discovery violation occurred in the case at bar. We note that four years elapsed from the date of arraignment and the date of trial. We surmise both parties conducted their own ongoing reexamination of the evidence as the 2013 trial date grew closer and in light of the court's rulings on the 2013 pretrial motions.

¶ 19    In this case, the record does not contain a formal order dictating deadlines for the initial production of discovery or the ongoing production of additional material and information gathered by the parties during the years this matter was pending trial. In the absence of a more specific discovery order, the discovery requirements applicable to the case at bar are governed by the mandates of Illinois Supreme Court Rule 415(b) (eff. Oct. 1, 1971). Rule 415 provides: "If, subsequent to compliance with these rules or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, he shall promptly notify the other party or his counsel of the existence of such additional material *** ." *Id*.

¶ 20    Next, we examine the chronology of events to determine if the State promptly disclosed the relevant test results to the defense as required by Rule 415. The record shows that on August 30, 2013, the defendant filed his motion *in limine* seeking to exclude portions of the 911 tape. On that date, August 30, 2013, the prosecutor assigned to the case discovered a previously assigned prosecutor had not made sure the knife was submitted to the crime lab for DNA analysis. Due to this oversight, on September 3 or 4, a prosecutor personally advised defense counsel that further discovery would be forthcoming and provided defense counsel with the name of the crime lab technician conducting the expedited lab analysis on the knife. On September 5 or 6, the State tendered the completed crime lab report to the defense. Trial

7

strategies were still evolving at this time for both parties as the trial court did not conduct a hearing on the pending motions *in limine* concerning the 911 call until September 12, 2013, and finalized that ruling by denying the State's motion to reconsider just two days before trial on September 17, 2013.

¶ 21　　　On September 17, 2013, the date the hearing on the defense's request for sanctions occurred, the State provided the trial court with an explanation showing its good-faith reason for failing to conduct the DNA testing before 2013. Although not required to so do, the State also promptly notified defense counsel of the anticipated production of additional information once the physical analysis of the knife was completed. Thereafter, as required by Supreme Court Rule 415(b), the State immediately notified the defense of the lab test results upon receipt by the State.

¶ 22　　　Based upon this record, we conclude the State's ongoing disclosure of additional newly discovered information was timely and did not constitute a discovery violation of Rule 415 at all. Therefore, we conclude the court abused its discretion by excluding the test results since a discovery violation did not occur.

¶ 23　　　In the interest of a complete analysis, assuming, *arguendo*, that the late submission of previously discovered evidence constituted a discovery violation, we next consider whether the sanction imposed by the court constituted an abuse of discretion. The imposition of sanctions for discovery violations is governed by Illinois Supreme Court Rule 415(g)(i) (eff. Oct. 1, 1971). The rule provides that when a party violates a discovery *rule or* order, "the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." *Id.*

8

¶ 24 We review a trial court's decision as to the appropriate sanction for a discovery violation for abuse of discretion. *People v. Ramsey*, 239 Ill. 2d 342 (2010). An abuse of discretion exists where the trial court's decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court. *Id.*

¶ 25 The case law provides that "the sanction of excluding certain testimony or evidence is disfavored because it does not contribute to the goal of truth-seeking [citation] and is appropriate in only the most extreme situations [citations]." *People v. Scott*, 339 Ill. App. 3d 565, 572-73 (2003). Such a severe sanction is appropriate only where it is necessary to cure any prejudice caused by the discovery violation, or where the offending party's violation is determined to be willful and blatant. *Ramsey*, 239 Ill. 2d 342; *People v. Damico*, 309 Ill. App. 3d 203 (1999).

¶ 26 The burden of showing surprise or prejudice from a discovery violation rests on the defendant. *People v. Heard*, 187 Ill. 2d 36, 63 (1999). In his motion for sanctions, defendant did not claim unfair prejudice or claim the undue prejudice could only be remedied by exclusion. Moreover, the defense motion did not allege the State's conduct was willful or deliberately designed to circumvent the duty for ongoing prompt production of discovery. Finally, the State provided a plausible, good-faith reason for its oversight, and the trial court did not make a finding that the State's conduct was either willful or blatant.

¶ 27 Thus, even if the trial court properly decided the State's conduct violated the discovery guideline, the trial court abused its discretion by excluding the test results in the absence of an allegation or showing of unfair prejudice to the State.

¶ 28                                    II. *Crawford* Violation

¶ 29        The State also contends the trial court improperly allowed defendant's motion *in limine* based on *Crawford*, 541 U.S. 36, by prohibiting the State from introducing evidence of defendant's nonhearsay responses to a 911 operator's questions. The State argues that the statements ordered redacted were nonhearsay and thus not subject to a *Crawford* analysis.

¶ 30        Initially, we note that defendant's one-paragraph response does not address the State's argument. Instead, defendant asks this court to affirm the trial court's decision on the grounds that the redacted portion of the 911 tape is more prejudicial than probative, "or for any other grounds supported by the record." Defendant does not cite to any authority or provide argument in support of this request.

¶ 31        The case law provides that "[a] reviewing court *** is not merely a repository into which an appellant may '[foist] the burden of argument and research,' nor is it the obligation of this court to act as an advocate or seek error in the record. [Citations.] Supreme Court Rule 341 requires that the appellant clearly set out the issues raised and the legal support therefor with relevant authority. [Citation.] The consequence of not complying with Supreme Court Rule 341 is waiver of those issues on appeal." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). We conclude these arguments advanced by the defense have been waived.

¶ 32        Next, we consider the merits of the State's argument that the trial court incorrectly applied the rationale of *Crawford* by granting defendant's motion *in limine* concerning the contents of the 911 call. As a general matter, a reviewing court examines a trial court's decision on a motion *in limine* for an abuse of discretion. *People v. Armbrust*, 2011 IL App (2d) 100955.

10

However, where review requires the court to address a question of law, our review is *de novo*. *People v. Caballero*, 206 Ill. 2d 65 (2002).

¶ 33 In *Crawford*, the Supreme Court held that out-of-court statements of a testimonial nature are barred under the confrontation clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. 36. While the *Crawford* court discussed the differences between testimonial hearsay and nontestimonial hearsay, it was at all times concerned with *hearsay*. *Id*. at 59 n.9 (the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"). Indeed, our supreme court has held that when addressing a potential *Crawford* violation, the threshold question must be whether or not the statements in question are hearsay. *People v. Leach*, 2012 IL 111534. Admissible nonhearsay does not implicate the confrontation clause. *People v. Peoples*, 377 Ill. App. 3d 978 (2007).

¶ 34 Hearsay in Illinois is governed by article VIII of the Illinois Rules of Evidence. Under article VIII, a statement is not hearsay if "[t]he statement is offered against a party and is *** the party's own statement, in either an individual or a representative capacity." Ill. R. Evid. 801(d)(1)(B)(2) (eff. Jan. 1, 2011) ("Admission by Party-Opponent"). Illinois decisions predating the 2011 codification of the rules of evidence similarly held that admissions by a defendant are not hearsay. See, *e.g.*, *People v. Aguilar*, 265 Ill. App. 3d 105, 110 (1994) ("The hearsay rule is not a basis for objection when the defendant's own statements are offered against the defendant; in such a case, the defendant's statements are termed 'admissions.' ").

¶ 35 The statements made by defendant and recorded on the 911 tape are admissions, and are plainly considered nonhearsay under Illinois law. As such, defendant's statements do not

11

implicate the confrontation clause or *Crawford*. The trial court's ruling that portions of the 911 tape in question should be redacted pursuant to *Crawford* was error, and we reverse.

¶ 36                                                    CONCLUSION

¶ 37        The judgments of the circuit court of Will County are reversed.

¶ 38        Reversed.

¶ 39        PRESIDING JUSTICE McDADE, dissenting.

¶ 40        The majority has reversed the trial court's exclusion of the State's DNA evidence as a discovery sanction, finding that there was no discovery violation at all. Because I cannot agree with that conclusion, I respectfully dissent.

¶ 41        The crime in this case occurred on March 12, 2009, and the knife was taken into evidence at the crime scene that same day.

¶ 42        The court ordered both the State and the defense to make discovery disclosures required by Supreme Court Rules 412 and 413 by April 22, 2009. Rule 412 addresses disclosures to be made by the State and Rule 413 sets out the discovery to be produced by the defendant. Rule 412(a)(iv) directs the State to disclose:

> "(iv) any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons, and a statement of qualifications of the expert." Ill. S. Ct. R. 412(a)(iv) (eff. Mar. 1, 2001).

This subsection would appear to encompass the results of the DNA testing at issue. Unlike some other of Rule 412's subsections, subsection (a)(iv) does not limit the requisite disclosures to those of persons or evidence the State intends to use at trial, presumably because the evidence to be tested is in the sole possession and control of the State. The State, according to my reading of

12

the rule, was required to secure DNA testing and disclose the results of that testing to the defendant by the court-ordered deadline of April 22, 2009, whether or not it intended to use the evidence at trial.

¶ 43    The State has acknowledged the tardiness of its compliance and has asserted three minor variations of its justification. The first, as set out in the majority Opinion, was that on August 30, 2013, the prosecutor assigned to the case "discovered that the knife had not been previously submitted to the crime lab for DNA analysis." *Supra* ¶ 8.

¶ 44    Second, the prosecutor asserted at a September 2013 hearing that, after the court decided on June 8, 2012,[1] to suppress defendant's statement to police about the knife, the State decided to submit the knife to the crime lab to determine if there was blood from the defendant or the victim on the knife that could link it to the crime. However, the need for testing was " 'lost in transition' " between the two prosecutors assigned to the case. *Supra* ¶ 12.

¶ 45    Third, in its initial appellant's brief, the State asserts, with citations to the Report of Proceedings, that:

> "[T]he People acknowledged the time lapse but pointed out that this lapse was due to the prior order [of June 8, 2012] suppressing defendant's statement identifying the knife and the realization that nobody had asked the victim whether she could identify the knife. (R. 811)  Also, with respect to the question of timing, the prosecutor responded that he sent the knife to the crime lab on August 30, 2013. (R. 811)"[2]

---

[1] At this time, the knife had been in the possession and control of the State for more than three years.

[2] The State thus waited an additional one year and nearly three months (4 1/4 years after disclosure was required to be made) to even submit the knife for analysis.

¶ 46    The State did not produce the DNA testing results by April 22, 2009. Nor, by its own evidence, did it *intend* to produce such results by the court-ordered disclosure date. When prosecutors finally realized they could not prove their case without DNA test results, they still waited more than an additional year (a total of four-and-one-quarter after the shooting) to even submit the knife for testing.

¶ 47    The majority finds no problem with this timing, opining that it is allowable under Rule 415—a rule it finds applicable because the record does not contain a "formal order dictating deadlines for the initial production of discovery or the ongoing production of additional material and information gathered by the parties during the years this matter was pending trial." *Supra* ¶ 19. The portion of Rule 415 relied upon by the majority states:

> "If, subsequent to compliance with these rules or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, he shall promptly notify the other party or his counsel of the existence of such additional material***." Ill. S. Ct. R. 415(b) (Oct. 1, 1971).

¶ 48    I do not believe Rule 415 is applicable in this case. The State did not *discover* additional material or information that was subject to disclosure subsequent to compliance with prior discovery requirements. It had the knife from day one and presumably knew it needed to be tested for DNA and the results disclosed to the defendant. It was clearly not later-discovered evidence creating a duty to supplement.

¶ 49    It was not until July 27, 2011—more than two years after the April 22, 2009, discovery deadline—that the defendant moved to suppress the knife and certain statements he made. During that two-year period the knife and the defendant's possible possession and use of it were major elements of the State's case against the defendant. The State acknowledges that it had no

14

intention of having the knife tested for DNA until the court ruled favorably for defendant on June 8, 2012. Despite Rule 412(a)(iv), the State chose not to have the knife tested for DNA for more than four years and now argues that not having done so is somehow a sufficient good-faith reason that it should not be subject to sanctions for its dereliction.

¶ 50 As noted by the majority, our standard for reviewing a trial court's sanction for a discovery violation is abuse of discretion. *People v. Ramsey*, 239 Ill. 2d 342 (2010). Under that standard, we reverse a trial court's decision only if it is so arbitrary, fanciful, or unreasonable that no reasonable person would take the same position. *Id.*

> " 'Abuse of discretion' is *the most deferential standard of review—next to no review at all—*and is therefore traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial. *People v. Coleman*, 183 Ill. 2d 366, 387 (1998). For example, a trial judge's decision whether to allow or exclude evidence is reviewed for an abuse of discretion [citation], as is his or her decision to limit discovery [citation], [or to] *impose a sanction for a discovery violation* (*Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 110-11 (2004)), ***." (Emphases added.) *In re D.T.*, 212 Ill. 2d 347, 356-57 (2004).

¶ 51 In the instant case, the sanction imposed by the trial court is expressly included in Rule 415(g)'s grant of discretion, was imposed after a failure to disclose the information for more than four years, and was partially explained by the court's complaint that this is a recurring violation by the State—a complaint that at least suggests a belief by the court that the failure was willful. Given the clear violation of the rule and attendant court order establishing a disclosure deadline, the court's apparent intent to curb recurrent discovery violations, the court's express authority to impose the challenged sanction, and our exceedingly deferential standard of review, I cannot find

15

an abuse of discretion and agree with the reversal of the trial court's order excluding the State's DNA evidence, and I respectfully dissent from that portion of the majority's opinion.

¶ 52       I do agree with the majority and the State that the defendant has waived his *Crawford* issue by his failure to make a reasoned and reasonably buttressed argument in support of his challenge. I would, however, observe, without discussion of the issue, that the excluded portion of the statements reviewed *in limine* includes questions posed by a second person—not defendant—that are integral to the significance of the statements, that may not be subject to a hearsay exception, and that could conceivably be viewed as testimonial in nature.

¶ 53       For the foregoing reasons, I respectfully dissent.