2015 IL App (4th) 130621

NO. 4-13-0621

FILED
October 6, 2015
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| CLINT FORREST, | ) | No. 12CF1163 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul Lawrence, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and Appleton concur in the judgment, and opinion.

**OPINION**

¶ 1        In April 2013, a jury found defendant, Clint Forrest, guilty of (1) aggravated battery (720 ILCS 5/12-3.05(c) (West 2010)), (2) criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2010)), and (3) mob action (720 ILCS 5/25-1(a)(1) (West 2010)).  In June 2013, the trial court sentenced defendant to four years' imprisonment for aggravated battery and three years for mob action, to run concurrently.

¶ 2        Defendant appeals, arguing that the trial court abused its discretion by barring testimony from a defense witness as a sanction for defendant's failure to comply with the disclosure requirements of Illinois Supreme Court Rule 413(d)(i) (eff. July 1, 1982).  Alternatively, defendant argues that he received ineffective assistance of counsel because his counsel failed to comply with Rule 413(d)(i).  For the reasons that follow, we affirm.

¶ 3                                I.  BACKGROUND

¶ 4        On November 2, 2012, the State charged defendant with aggravated battery, criminal damage to property, and mob action. (The State later dismissed a fourth count, which is not at issue in this appeal.) The State's charges arose from its claim that a day earlier, defendant—acting in concert with codefendants, Jordan Graham and Kailey Westerfield—(1) punched and kicked Gabriel Lewis and Emilee Edge and (2) damaged property valued in excess of $300.

¶ 5        A. The State's Motion To Bar Testimony as a Discovery Sanction

¶ 6        After jury selection but prior to opening statements, the State informed the trial court that the day before, defense counsel stated her intent to call Westerfield as a defense witness. The State explained that Westerfield was a codefendant and that defendant's discovery responses did not list Westerfield as an intended witness. The State claimed that defense counsel intended to call Westerfield to testify to "bad acts involving herself and *** Lewis," who was a victim in the present case. The State represented that Lewis' testimony would constitute a significant part of the State's evidence. The State asserted it did not anticipate defense counsel's calling Westerfield as a witness because her testimony could be used to incriminate her in her own criminal case.

¶ 7        The trial court then asked defense counsel what kind of bad acts Westerfield would be testifying about. Counsel explained that Westerfield and Lewis had been dating and ended their relationship three months prior to the alleged offenses. Thereafter, Lewis stalked Westerfield, harassed her, and damaged her car. As a result, Westerfield obtained an order of protection against Lewis. According to defense counsel, these prior bad acts established that Lewis had a motive to fabricate his testimony implicating defendant. Counsel explained further that the State could not claim that it was surprised by the content of Westerfield's proposed testimony because it was set forth in Westerfield's recorded statement to police.

¶ 8        The State responded that it was unprepared for Westerfield's testimony. The State argued that had it known Westerfield would testify, it potentially could have secured witnesses to rebut her testimony. The State—without citing a specific discovery rule—requested that the court bar Westerfield's testimony as a sanction for defendant's failing to disclose her as a witness.

¶ 9        The trial court found that because Westerfield was not listed as an intended witness in defendant's discovery responses, the State had no reason to assume that she would be called as a witness. The court concluded that because defendant failed to disclose Westerfield as a witness, the court would not allow her to testify. Defendant objected, arguing that Westerfield's name was included in other discovery contexts, and the State should have anticipated the possibility that she would be called as a witness. The court did not change its ruling.

¶ 10                    B. The State's Evidence Presented at Trial

¶ 11        The State called Edge as a witness, and she testified that on the night of October 31, 2012, she was at a party with Lewis—her boyfriend of three months—and their friend, Marco Alvarez. Around 2 the following morning, Marco's uncle, Rigoberto Alvarez (Rigo), called Lewis and invited Edge, Lewis, and Marco to a party at Anna Henson's apartment. Edge, Lewis, and Marco drove to the party in Lewis' blue Chevy Tahoe. When they entered Henson's apartment, Henson, Rigo, Westerfield, Omar Naverette, and Graham were also there. Defendant, who was in the bathroom when Edge, Lewis, and Marco arrived, left the bathroom and started a "verbal altercation" with Lewis. Immediately thereafter, Edge and Westerfield began their own "verbal altercation." Defendant lunged at Lewis and tried to attack him, but Marco and Navarette restrained defendant. Edge and Lewis left the apartment and walked toward Lewis' Tahoe, intending to drive away. Edge stated that when she and Lewis decided to go to Henson's apartment, they were unaware that defendant and Westerfield would be there.

¶ 12       Edge testified further that as she and Lewis approached the Tahoe, defendant ran out of the apartment toward them, swinging a knife. Lewis ran away, and defendant used the knife to deflate both of the Tahoe's driver side tires. Defendant also grabbed a cinder block and threw it at the Tahoe, smashing the driver side window, and then chased Lewis down the street with the knife.

¶ 13       Edge recounted that Westerfield attempted to punch her but missed. She responded by hitting Westerfield, and the two wrestled each other to the ground. Someone pulled Edge off of Westerfield and stood her up. Defendant then punched Edge in the face, knocking her to the ground. Rigo held Edge on the ground, while defendant, Westerfield, and Graham hit her. Defendant stomped on the side of Edge's face and kicked her multiple times. Although Edge could not see defendant's face when he punched and kicked her, she knew by his shoes, clothing, and the sound of his voice that defendant was the person attacking her. Eventually, Edge's attackers went back inside the apartment, and she called 9-1-1.

¶ 14       On cross-examination, defense counsel questioned Edge about a recorded statement she gave to police after the alleged attack. Edge testified that she did not recall what she told police in the interview. The trial court permitted defense counsel to play the recording for the jury. In the recording, Edge stated that she knew defendant and Westerfield would be at Henson's apartment. However, when questioned on that point by defense counsel, Edge continued to deny knowing that defendant and Westerfield would be there. Edge testified further that she knew that Westerfield had previously accused Edge and Lewis of damaging Westerfield's car.

¶ 15       Chad Hitchens, an officer with the Bloomington police department, testified that he responded to a call on the morning of November 1, 2012, at Henson's apartment. When he

arrived, he observed Edge bleeding from her head and screaming and crying. Edge told Hitchens that defendant had tried to stab Lewis. Hitchens observed a blue Tahoe with a broken window and two flat tires. He searched the scene for a knife but did not find one.

¶ 16        Prior to calling Lewis to testify, the State moved to prohibit defendant from questioning Lewis concerning the aforementioned bad acts. The trial court stated that it would allow defense counsel to question Lewis about those acts but would not allow that questioning to distract from the primary issues in the case.

¶ 17        Lewis testified that he had dated Westerfield for approximately 2 1/2 years, but in July 2012, their relationship ended. A month later, Lewis began dating Edge. Lewis stated that on the night of October 31, 2012, he was at a Halloween party with Edge and Marco when Marco told them that Rigo had called to invite the three of them to a party at Henson's apartment.

¶ 18        Lewis testified further that he, Edge, and Marco went to Henson's apartment. Almost immediately after they entered the apartment, defendant came out of the bathroom with a knife in his hand. As Navarette held defendant back, Lewis and Edge exited the apartment and walked toward the Tahoe. Defendant ran after them with a knife, and Lewis ran away. Defendant used the knife to deflate two of the Tahoe's tires. Defendant then threw a cinder block through the driver side window of the Tahoe. Lewis ran far enough away from the scene that he could not see what was happening to Edge, but he heard her screaming for help. When Lewis returned to the scene, he saw that Edge was beaten up. Lewis called 9-1-1.

¶ 19        Lewis stated that while he and Westerfield were dating, she was cheating on him with defendant. Lewis was aware that, at the time of the alleged offenses, an order of protection prohibited him from contacting Westerfield. Lewis also knew that the order of protection was based, in part, on accusations that Lewis had damaged Westerfield's car. At the time of trial,

Lewis was facing a charge that he committed domestic battery against Westerfield. On cross-examination, Lewis stated that he and Westerfield had a "hostile" relationship. Lewis testified that he was willing to inflict physical harm on defendant because of defendant's relationship with Westerfield.

¶ 20                    C. Defendant's Evidence Presented at Trial

¶ 21          Defendant called Henson, who testified that when Lewis and Edge arrived at her apartment, Henson immediately told them to leave. They did not, and Lewis lunged at defendant. Henson never saw defendant carrying a knife. Henson remained inside her apartment and did not see the events that occurred outside.

¶ 22          Rigo testified that on October 31, 2012, he invited Marco to Henson's apartment and informed Marco that Lewis and Edge were not welcome there. Rigo did not see defendant brandish a knife. Rigo stated that he stayed inside the apartment while the altercation was occurring outside.

¶ 23          Defendant elected not to testify.

¶ 24                    D. Closing Argument and Verdict

¶ 25          During closing argument, defense counsel argued that Edge and Lewis had falsified their testimony to "set up" defendant because Lewis was upset that defendant was dating Westerfield.

¶ 26          The jury found defendant guilty of all three counts. The trial court later sentenced defendant to concurrent prison terms of four years for aggravated battery and three years for mob action. This appeal followed.

¶ 27                    II. ANALYSIS

¶ 28          Defendant argues that the trial court abused its discretion by barring testimony

from a defense witness as a sanction for defendant's failure to comply with the disclosure requirements of Illinois Supreme Court Rule 413(d)(i) (eff. July 1, 1982). Alternatively, defendant argues that he received ineffective assistance of counsel because his counsel failed to comply with Rule 413(d)(i). We address defendant's arguments in turn.

¶ 29                    A. The Trial Court's Evidentiary Ruling

¶ 30        Defendant argues that the trial court abused its discretion by barring testimony from a defense witness as a sanction for defendant's failure to comply with the disclosure requirements of Illinois Rule 413(d)(i) (*id.*). Although we agree with defendant that the trial court abused its discretion, we conclude that any error in barring the evidence was harmless.

¶ 31                         1. *Standard of Review*

¶ 32        We review a trial court's decision as to the appropriate sanction for a discovery violation for an abuse of discretion. *People v. Schlott*, 2015 IL App (3d) 130725, ¶ 24, 33 N.E.3d 665. An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the court. *Id.*

¶ 33                         2. *Offers of Proof*

¶ 34        When, as here, a defendant claims on appeal that the trial court improperly barred some defense evidence, he must provide the reviewing court with "an adequate offer of proof as to what the excluded evidence would have been." (Internal quotation marks omitted.) *People v. Pelo*, 404 Ill. App. 3d 839, 875, 942 N.E.2d 463, 493-94 (2010). In *Pelo*, this court provided the following guidance:

> "[A]n offer of proof serves dual purposes: (1) it discloses to the
> court and opposing counsel the nature of the offered evidence, thus
> enabling the court to take appropriate action, and (2) it provides the

reviewing court with an adequate record to determine whether the trial court's action was erroneous. [Citation.]

The traditional way of making an offer of proof is the 'formal' offer, wherein counsel offers the proposed evidence or testimony by placing a witness on the stand, outside the jury's presence, and asking him questions to elicit with particularity what the witness would testify to if permitted to do so. [Citation.]

In lieu of a formal offer of proof, counsel may request permission from the trial court to make representations regarding the proffered testimony. As a matter of the court's discretion, the court *may* allow such an 'informal' offer of proof.

A trial court may deem an informal offer of proof sufficient if counsel informs the court, with particularity, (1) what the *** testimony will be, (2) by whom it will be presented, and (3) its purpose. [Citation.] However, an informal offer of proof is inadequate if counsel (1) 'merely summarizes the witness' testimony in a conclusory manner' [citation] or (2) offers unsupported speculation as to what the witness would say [citation].

In any event, it remains entirely within the trial court's discretion whether to accept an informal offer of proof in lieu of the formal offer consisting of testimony from the witness stand. Although it would be helpful for the court to address this issue explicitly—that is, to inform counsel on the record whether the court is

satisfied with counsel's informal offer of proof—if the court fails to do so *sua sponte*, the obligation to obtain such a ruling remains with counsel. Especially given how easy it is for counsel to obtain such a ruling from the court, we are disinclined to engage in speculation about whether the court was willing to accept an informal offer of proof if the record is not explicit on that point. Thus, absent such an explicit record, it was incumbent upon defendant's counsel to make a formal offer of proof to the court to preserve for appeal the court's ruling that the testimony in question was not admissible." (Emphasis in original.) *Id.* at 875-76, 942 N.E.2d at 494.

Regrettably, the trial court and defense counsel did not follow the aforementioned suggested procedure.

¶ 35                3. *The Offer of Proof in the Present Case*

¶ 36        Here, defense counsel made an informal offer of proof. After the State objected to Westerfield's testifying to "some prior bad acts involving herself and Gabe Lewis," the trial court asked defense counsel, "Bad acts? What are we talking about?" Defense counsel explained that, at the time of the alleged offenses, Westerfield was dating defendant. A few months prior, she ended a dating relationship with Lewis. Since then, counsel recounted, Lewis "has stalked her, harassed, damaged her car, on many occasions. He has thrown things into her car, kitty litter for example popped her tire, smashed her windshield, and run into her car. So much to the extent that Kailey Westerfield had to obtain an order of protection against Gabe Lewis[.]" Counsel further explained that the purpose of admitting the testimony about the bad acts was to establish

that Lewis had a motive to fabricate his testimony implicating defendant.

¶ 37      The trial court did not explicitly state whether it was accepting defendant's informal offer of proof as to Westerfield's testimony.  It did, however, bar Westerfield's testimony as a result of defendant's failure to disclose Westerfield as a witness.

¶ 38      The trial court should have asked the State whether it objected to defense counsel's representations regarding Westerfield's testimony.  After hearing the State's position, the court could then have exercised its discretion to explicitly accept or reject defendant's informal offer of proof.  Here, despite the lack of an explicit statement by the court indicating that it was accepting defense counsel's informal offer of proof, we will infer that the court accepted it before the court ruled to bar Westerfield's testimony.

¶ 39            4. *Sanctions for Failure To Comply With Discovery Rules*

¶ 40      Illinois Supreme Court Rule 413(d)(i) (eff. July 1, 1982) provides that a criminal defendant "shall furnish the State" with "the names and last known addresses of persons he intends to call as witnesses."  Although defendant does not contest that (1) he failed to disclose Westerfield as a witness until the day of trial, and (2) Illinois Supreme Court Rule 415(g) (eff. Oct 1. 1971) authorizes a trial court to impose sanctions for a party's failure to comply with the discovery rules—specifically, the authority to "grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances"—defendant contends that the court here abused its discretion on this record by imposing the most onerous sanction—namely, the exclusion of Westerfield's testimony.  We agree.

¶ 41      When fashioning an appropriate sanction, a trial court should primarily consider four factors: (1) the effectiveness of a less severe sanction; (2) the materiality of the proposed testimony; (3) the potential prejudice to the other party resulting from the testimony; and (4) bad

- 10 -

faith in the violation of the discovery rules. *People v. Ramsey*, 239 Ill. 2d 342, 430, 942 N.E.2d 1168, 1216-17 (2010). Precluding a criminal defendant from presenting testimony or evidence is reserved for only the most extreme situations. *People v. Tally*, 2014 IL App (5th) 120349, ¶ 28, 10 N.E.3d 488. The court's imposition of sanctions is reviewed for an abuse of discretion. *People v. Houser*, 305 Ill. App. 3d 384, 390, 712 N.E.2d 355, 359 (1999). To exercise sound discretion, a court must consider available alternative sanctions. *Id.*

¶ 42                    a. Factor One: The Effectiveness of a Less Severe Sanction

¶ 43            In this case, with respect to the first factor—the effectiveness of a less severe sanction—the record contains no indication that the trial court considered alternative sanctions prior to barring Westerfield's testimony. (And we note the State suggested none.) Defendant's violation potentially could have been cured by granting the State a continuance to secure witnesses or allowing it the opportunity to once again interview Westerfield. The State contends on appeal that a continuance would have been inappropriate because (1) the continuance would have needed to be lengthy enough for the State to secure witnesses, (2) it was unknown whether such witnesses would be available, and (3) the jury had already been selected. The points raised by the State on appeal could have—and should have—been raised by the State at the trial level so they could have been explicitly addressed by the trial court on the record. Based upon the record before us, we cannot know whether a continuance would have sufficiently addressed any of the State's legitimate concerns that arose from defendant's discovery violation.

¶ 44            We also note that Rule 415(g)(ii) (Ill. S. Ct. R. 415(g)(ii) (eff. Oct. 1, 1971)) allows the State to subject *defense counsel* to appropriate sanctions for a willful violation of a discovery rule. In *People v. Foster*, 271 Ill. App. 3d 562, 567-68, 648 N.E.2d 337, 340-41 (1995), this court reminded trial courts of their authority to sanction counsel for willful discovery viola-

tions and the proper procedure to follow when doing so:

"Because Rule 415(g)(ii) speaks of a 'wilful violation,' a trial court should explicitly ask the counsel whom the court believes may have violated a discovery order for his explanation, if any, as to why he failed to comply with the court's order. Once the court hears counsel's response, the court should then make specific findings of fact before concluding that a wilful violation by counsel has occurred. [Citation.] If the court finds *** a wilful violation by counsel, then the court should consider two *unrelated* paths of action by asking both of the following questions: (1) how important and necessary is the new evidence being offered in violation of the discovery rules, and if the court admits it, how prejudicial and surprising will it be to the other side? And, (2) what personal sanction, if any, should the court impose upon counsel so as to both punish and deter wilful violations of its discovery order?" (Emphasis in original.)

We are not suggesting that defense counsel's violation was willful in the present case. We merely mean to remind trial courts of their authority to subject counsel to sanctions and to encourage those courts to consider sanctioning counsel as an alternative to barring testimony.

¶ 45    Along these same lines, a most curious aspect of this case is the trial court's failure to ask defense counsel the three initial questions that one might think most important when addressing the State's motion to bar Westerfield from testifying because of an alleged discovery violation—namely, (1) when did counsel first become aware of Westerfield's availability to testi-

fy; (2) when did counsel decide she wanted to call her; and (3) when did counsel so inform the State? The State could have suggested to the court that it make these inquiries, but the State did not, leaving this gaping hole in the record.

¶ 46      b. Factor Two: The Materiality of the Evidence

¶ 47    As to the second factor, Westerfield's testimony was material to the defense. Defendant intended to produce testimony from Westerfield that Lewis had a motive to fabricate his testimony. Such testimony was material in this case, given that the evidence against defendant was based in large part upon Lewis' testimony. The State argues that (1) the offer of proof was not specific enough to determine whether Westerfield's testimony was material and (2) Westerfield's testimony would have been collateral to the issues at hand. The State's argument about lack of specificity should have been raised in the first instance to the trial court, thereby giving both the court and defense counsel the chance to address the State's concern. In any event, the court seemed to think the offer adequate and sufficiently specific to establish its materiality.

¶ 48      c. Factor Three: Prejudice

¶ 49    As to the third factor, the State would not have suffered prejudice from the admission of Westerfield's testimony. The State conducted a recorded interview with Westerfield and therefore could not have been surprised by her proposed testimony. When assessing the State's claim that it was somehow prejudiced by defendant's late notification that he intended to call Westerfield, we are mindful of the fact that she was a codefendant with defendant in this very case. That status is significant, if not dispositive, of the State's claim that it was surprised and prejudiced by the late notification that Westerfield was going to testify because the State had to know the possibility always exists that a codefendant, at some point, might be willing to testify at

her codefendant's trial. To be blunt, no experienced criminal law practitioner could possibly be surprised by such a development, although it is a little unusual that the codefendant winds up testifying for a codefendant, instead of "flipping" and testifying as a State's witness.

¶ 50        Just as we reject the State's claim that the late notification about Westerfield somehow surprised and prejudiced the State, we would similarly reject defendant's assertions of surprise and prejudice had Westerfield "flipped" from being a codefendant to being a State's witness against defendant. (As we indicated, the more typical practice.) An experienced defense attorney would always understand that her client's codefendant, represented by separate counsel, would likely be negotiating with the prosecutor to see whether an agreement could be reached that would be beneficial to the codefendant in exchange for his testimony at trial against the remaining defendant. We deemed the trial court to have erred by barring the codefendant in this case from testifying because of the late notification under Rule 413, and we would similarly conclude that an order barring a codefendant from testifying as a State's witness because of a late notification under Illinois Supreme Court Rule 412 (eff. Oct. 1, 1971) would be unreasonable.

¶ 51        None of this is to say that the trial court, in appropriate circumstances, could not exercise its discretion to order the late-inscribed witness to be available for interview by the opposing counsel before being permitted to testify. We simply note, regarding the issue of prejudice that a party might suffer, it is difficult to envision any case in which the State or a defendant could legitimately claim surprise and prejudice when a codefendant testifies at his codefendant's trial, whether called by the State or by the defendant.

¶ 52                          d. Factor Four: Bad Faith

¶ 53        Regarding the final factor, no evidence in the record shows that defense counsel's failing to disclose Westerfield as a witness was the result of bad faith. The State argues that

counsel knew of Westerfield's testimony as early as December 2012—when the State tendered to defendant a copy of Westerfield's statement to police—but failed to disclose Westerfield as a witness until just prior to jury selection in April 2013. However, the relevant date is not when defense counsel learned of Westerfield's statement but, instead, when counsel learned that Westerfield was willing and available to testify. As we noted earlier, the record is silent on that point. Without knowing when counsel learned that Westerfield was willing to testify, we decline to conclude that counsel's failing to disclose Westerfield was the result of bad faith.

¶ 54    Considering these four factors together, we conclude that the trial court abused its discretion by barring Westerfield's testimony.

¶ 55                                 5. *Harmless Error*

¶ 56    The State argues that any error in barring Westerfield's testimony was harmless because Westerfield's testimony would have been cumulative and because it would not have impeached Edge's testimony, which was sufficient to establish defendant's guilt. We agree.

¶ 57    A nonconstitutional evidentiary error is harmless if there is no reasonable probability that the jury would have acquitted the defendant absent the error. *People v. Stull*, 2014 IL App (4th) 120704, ¶ 104, 5 N.E.3d 328.

¶ 58    Here, according to defendant's informal offer of proof, Westerfield would have testified that (1) she and Lewis were in a dating relationship that ended three months prior to the alleged offenses in the present case; (2) after the breakup, Lewis stalked and harassed Westerfield and damaged her car; and (3) as a result of Lewis' actions, Westerfield obtained an order of protection against him, which was in effect at the time of the alleged offenses.

¶ 59    At trial Edge testified that, prior to the offenses in the present case, Westerfield had alleged that Edge and Lewis ran into her car. Lewis testified that, while he was dating

- 15 -

Westerfield, she was cheating on him with defendant. Lewis stated that at the time of the alleged offenses, and order of protection was in place prohibiting him from having contact with Westerfield. Lewis was aware that the protective order resulted, in part, from Westerfield's accusations that Lewis had damaged her car. Lewis described his relationship with Westerfield as "hostile" and admitted that he was so angry with defendant that Lewis was willing to harm him. Lewis asserted further that, at the time of trial, he was facing a charge of domestic battery against Westerfield.

¶ 60       When considering Westerfield's proposed testimony in the context of the other evidence presented at trial, we conclude that there is no reasonable probability that the jury would have acquitted defendant had Westerfield been allowed to testify. A significant part of Westerfield's proposed testimony was cumulative of the testimony of Lewis and Edge that already established the hostile nature of the relationship between Lewis and Westerfield, and defendant argued to the jury that Lewis' hostility motivated him to falsify his testimony against defendant. The jury rejected that theory and instead found credible the testimony of Edge and Lewis. Their testimony was supported by Hitchens's account that he found Edge bloody and crying outside Henson's apartment.

¶ 61                          B. Ineffective Assistance of Counsel

¶ 62       Alternatively, defendant argues that he received ineffective assistance of trial counsel because counsel failed to comply with Rule 413(d)(i).

¶ 63       A claim of ineffective assistance of counsel is subject to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under that test, a defendant must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceedings would have been different. *People v. Ramsey*, 239 Ill. 2d 342, 433, 942 N.E.2d 1168, 1218 (2010). A "reasonable probability" is defined as a showing sufficient to undermine confidence in the outcome, rendering the result unreliable or fundamentally unfair. *People v. Patterson*, 2014 IL 115102, ¶ 81, 25 N.E.3d 526. A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Arbuckle*, 2015 IL App (3d) 121014, ¶ 44, 31 N.E.3d 351.

¶ 64        In the present case, defendant's claim fails because he cannot establish prejudice, *i.e.*, a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. Had defense counsel properly disclosed her intent to call Westerfield as a witness, the court would not have imposed the sanction barring Westerfield's testimony. However, as explained earlier, the court's imposition of the sanction was harmless error because there was not a reasonable probability that defendant would have been acquitted had Westerfield's testimony been admitted. Prejudice under *Strickland* requires a similar conclusion that, absent the alleged error, there is a reasonable probability that the results of the proceedings would have been different. *Ramsey*, 239 Ill. 2d at 433, 942 N.E.2d at 1218. As defendant cannot establish that reasonable probability, his claim of ineffective assistance of counsel fails.

¶ 65                                III. CONCLUSION

¶ 66        For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 67        Affirmed.