2021 IL App (2d) 180519-U
No. 2-18-0519
Order filed February 25, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-2550 |
| ARCELIOUS DCAAZLON DAVIS-ISAAC, | ) ) ) | Honorable John S. Lowry, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:    At defendant's trial for burglary of a Family Dollar store, any error in the admission of a cab driver's testimony that the defendant or his fellow passenger in the cab told the driver to take them to a dollar store was not reversible error. There was no reasonable probability that, absent that testimony, the jury would not have found that the defendant entered the Family Dollar store with the intent to commit a theft therein. Rather, there was abundant independent evidence that defendant arrived at the Family Dollar store in a cab and then entered the store with the aim of robbing it.

¶ 2    Defendant, Arcelious Dcaazlon Davis-Isaac, appeals from his conviction of a single count

of burglary (720 ILCS 5/19-1(a) (West 2016)) (entering a store with intent to commit a theft); the

State alleged that defendant entered a dollar store with the intent to commit a theft. Defendant

raises three claims of error relating to the admission of testimony by a cab driver. The driver stated that either defendant or his companion directed the driver to take them to the store that the State accused defendant of burglarizing. Defendant contends (1) that the trial court erred in ruling that the cab driver's testimony was admissible to show the impact of the remarks on the cab driver; (2) that, even if the court did not err in admitting the testimony, the State exceeded the scope of the proffered purpose for the testimony when it argued in rebuttal that the testimony showed defendant's intent to burglarize the store; and (3) that, because the court did not instruct the jury to consider the testimony solely to explain why the cab driver drove to the store, the State's improper use of that testimony was not corrected. As we will detail, all of these claims of error require some showing of prejudice to constitute reversible error, and we hold that defendant has not shown the requisite prejudice. We therefore affirm.

¶ 3                                     I. BACKGROUND

¶ 4      A grand jury indicted defendant on (1) one count of burglary (entry into a store with intent to commit a theft) (720 ILCS 5/19-1(a) (West 2016)), (2) one count of theft (unauthorized taking of $105.88 in cash) (720 ILCS 5/16-1 (a)(l) (West 2016)), and (3) one count of unlawful possession of a hypodermic syringe or needle (720 ILCS 635/1 (West 2016)). The State dismissed the third count; defendant had a jury trial on the remaining two counts.

¶ 5      The evidence not challenged by defendant established that, at about 6 p.m. on October 10, 2017, a black male walked into a Family Dollar store at 3740 East State Street and then walked out seconds later. A store employee saw him open the door of a cab, speak to the driver, and gesture "towards the middle of the buildings." Less than a minute after he left the first time, he walked back into the store, offered the cashier a handful of coins to buy some candy, and, when the cashier

opened the cash drawer, grabbed the cash out of it and fled. Store employees saw him get into the cab and saw the cab drive away.

¶ 6      Rockford police recovered a black hooded sweatshirt and a Bulls baseball cap from the cab in which defendant was a passenger. That clothing was consistent with the clothing worn by the person who grabbed the cash as depicted in the store security recordings. A search of the cab also revealed $15 in $5 bills in the center console. The police found $36 in small bills in a pocket of the clothing worn by a female passenger in the same cab.

¶ 7      Gregory Hardiman, the driver of the cab, testified for the State; the issues in this appeal arise from the trial court's decision to admit Hardiman's testimony about remarks by one of his passengers. Hardiman testified that, on October 10, 2017, not long before his normal quitting time of 6 p.m., he went to "Swanson"—Swanson Parkway in Cherry Valley—to pick up a fare. A woman got into the cab and told Hardiman to wait for another passenger. A "guy" then came around the side of a garage and got in. One of the passengers said that they wanted to go to Dollar General, but after talking with them, Hardiman "figured out they wanted Family Dollar on East State [in Rockford]." Asked to clarify which passenger had spoken, Hardiman testified that he remembered only the substance of the conversation, not who was talking to him. Defendant objected that this testimony was hearsay, but the court overruled the objection, saying, "It's not to show the truth of the matter asserted, but to show why he did what he did, where he went where he went to go." Defendant did not request that the court give a limiting instruction about the use of Hardiman's testimony.

¶ 8      Hardiman further testified that he took the two passengers to the store on East State Street:

> "I pulled in close to the front door and then he got out. The guy right there got out and then said don't park here, park down in the lot. And so the lady in the car said park

down by—there's a barber shop like right around the end of the building. And so that's where I parked at."

(When Hardiman said, "[t]he guy right there," he was presumably identifying defendant, but Hardiman was never asked to formally identify defendant in court.) The male returned to the cab almost as soon as Hardiman had parked it. One of the passengers told him to drive to "Chicago and East State" and pull over. After about a minute, an SUV pulled up; it was an Escalade or a Lincoln. The female passenger left the cab and entered the SUV. The SUV drove away, but returned in about a minute, and the female passenger returned to the cab. Defense counsel did not make further objections to the admission of Hardiman's testimony concerning his passengers' utterances.

¶ 9       Hardiman drove his two passengers back to the house at which he had picked them up. Police vehicles either were there already or arrived while the man was paying his fare. The male passenger tried to flee but was arrested.

¶ 10      As noted, defendant contends on appeal that, contrary to the narrow purpose for which the State offered Hardiman's testimony that one of the passengers directed him to the Family Dollar store, the State argued in rebuttal that the testimony showed that defendant entered the store with the intent to commit a theft. Defendant contends that the following portion of the State's argument was improper:

> "Now, further regarding intent. To accept the defense's theory that the defendant somehow formulated this [plan] to take the money out of the cash register after he entered the store, you would have to believe the following: That he and his lady companion hired a taxi cab in Cherry Valley and had that taxi cab drive them directly to the Family Dollar store where he got out, he went into the Family Dollar store and picked out one piece of

candy and then put it on the counter to purchase. That was his reason for driving from Cherry Valley to the Family Dollar store at 3740 East State Street. That he picked up the Reese's, put it down on the counter. And then when the drawer of the cash register opened, suddenly it occurred to him, hey, I can take this money now. I'm going to grab it and run out. I'd submit, ladies and gentlemen, that's preposterous. It's preposterous.

You hire a cab. You come to the store. You have a cap on if it's raining, you have a Bulls cap. You then put a hoodie over it. You come in, look at the place, the cash register, go out, come back in, go to the cash register. Obviously the intent, based on the testimony of the witnesses and the video was [']I'm going to come in here[']—not even pretend to shop. Not even walk around the store like, you know, this is, this is a true customer. Go right up, take one piece of candy and then when the cash register opens, run out.

I said before, ladies and gentlemen, you don't leave your common sense outside the jury room. Take it in with you. That just does not make sense. You *** have enough evidence here to find the intent that you need that this *** defendant, when he entered that store, came in for one purpose and one purpose only, to take the money out of the cash register once that drawer opened and he did it.

You know, I said at the beginning of this case that this was a well-executed dumb plan to take a taxi to a store and think that because you moved it down the street a ways, you can jump into it and get out of there."

¶ 11 The jury found defendant guilty of both burglary and theft. Defendant moved for a new trial, arguing, among other things, "[t]hat the Court erred [in] admitting the hearsay testimony of Greg Hardiman, allowing him to testify about statements made in the vehicle by an unknown person." At the hearing on that motion, defense counsel continued to maintain that the problem in

Hardiman's testimony was his inability to identify who told him to drive to the store—that is, counsel made what amounted to an argument relating to foundation:

"[Concerning w]hen [Hardiman] first went to the house in Cherry Valley to pick up the defendant and a female. He testified that *** they told him where to go. There was an objection that was made. He didn't remember *** who said where they said to go[.]

\* \* \*

*** [Hardiman testified that h]e wasn't paying much attention. And then he said that they said where to go which was the Family Dollar store, Judge. *** [H]e could not remember who said it.

An objection was made for hearsay, and *** the Court overruled my objection for hearsay. And the State then relied on that hearsay statement in argument about how this was their plan because they said to go to this location; and we don't know, unfortunately, *** who made the plan to go to the Family Dollar store."

¶ 12    The court rejected defense counsel's argument, finding that the State had not made improper use of Hardiman's testimony:

"In arguments for the motion, the defendant asserted that the State relied on the statement in closing to support its theory of a, quote, plan, end quote, to go to Family Dollar. Defendant argued that it was not known who made the plan.

The Court has reviewed its trial notes. And while the State did argue in closing a plan to take a taxi to Family Dollar, the testimony of Mr. Hardiman and statement that, quote, they told him where to go, was not mentioned in closing arguments by the State."

¶ 13    At sentencing, the court ruled that the theft conviction merged into the burglary conviction. It sentenced defendant to a term of 18 months' probation, including 180 days in jail. Defendant timely appealed.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, defendant makes three related arguments. First, he contends that the trial court erred in admitting Hardiman's testimony that one of his passengers directed him to the Family Dollar. Defendant claims that, contrary to the trial court's characterization, the passenger's remarks to Hardiman were inadmissible hearsay because they were offered to prove the truth of the matter asserted, not merely to show their effect on Hardiman. Second, even if Hardiman's testimony about the passenger's remarks was properly admitted, the State "improperly used [the testimony] in closing arguments as substantive evidence of a plan and the defendant's intent to commit [the] offense [of burglary]." Third, because the court did not instruct the jury to consider the testimony solely to explain why the cab driver drove to the store, the State's improper use of that testimony was not corrected.

¶ 16    We first examine whether defendant preserved these contentions for appeal. Defendant asserts, and the State does not contest, that he preserved his claim of error in the admission of Hardiman's testimony by timely objecting and including the claim in his posttrial motion. However, the State argues, and defendant concedes, that he forfeited his argument that the State made improper use of Hardiman's testimony in its rebuttal remarks; though defendant included the issue in his posttrial motion, he had failed to make a contemporaneous objection to the State's remarks in rebuttal. See *People v. Wheeler*, 226 Ill. 2d 92, 122 (2007) ("To preserve claimed improper statements during closing argument for review, a defendant must object to the offending

statements both at trial and in a written posttrial motion."). Defendant thus asks us to review the issue under the plain-error doctrine.

¶ 17    Defendant does not discuss whether he properly preserved his claim that the trial court erred in failing to provide a limiting instruction on the use of Hardiman's testimony. Defendant neither contemporaneously asked the court for such an instruction nor included the issue in his posttrial motion. Thus, defendant apparently forfeited this claim. See *People v. Herring*, 2018 IL App (1st) 152067, ¶ 77 (where the defendant objected to the admission of evidence but did not seek a limiting instruction as to that evidence, he forfeited the claim that that the trial court should have given such an instruction). However, the State does not raise this particular forfeiture, and has thus itself forfeited any claim of forfeiture. See, *e.g.*, *People v. Bridgeforth*, 2017 IL App (1st) 143637, ¶ 46 ("The rules of waiver also apply to the State, and where, as here, the State fails to argue that defendant has forfeited the issue, it has waived the forfeiture."). Consequently, we address the claim as properly preserved.

¶ 18    We stress that defendant does not attack the admission of Hardiman's testimony concerning the statements that defendant and his companion made to Hardiman once the cab arrived at its destination. Defense counsel did not object to that testimony, and defendant does not argue that its admission was plain error.

¶ 19    Defendant's preserved claims and unpreserved claims are governed by different substantive standards, but all have this in common: defendant is not entitled to a reversal unless he can show prejudice. Nonconstitutional errors such as the erroneous admission of evidence and the failure to *sua sponte* provide a jury instruction are harmless where there is no reasonable probability that the jury would have acquitted the defendant absent the errors. *People v. Forrest*, 2015 IL App (4th) 130621, ¶ 57.

¶ 20    As noted, defendant invokes the plain-error doctrine as a means for us to reach the merits of his unpreserved claim of error regarding the State's rebuttal argument. "Absent reversible error, there can be no plain error." *People v. Naylor*, 229 Ill. 2d 584, 602 (2008). However, even if defendant shows error, he cannot obtain relief without further showing that either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error"; or (2) "[the] error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant invokes the first prong of plain error, arguing that we should reach his claim of error regarding the State's rebuttal argument because the evidence at trial was not closely balanced.

¶ 21    Regardless of whether there was error, defendant has not shown the requisite prejudice that would compel reversal. As we will explain, the evidence that defendant planned to steal from the Family Dollar when he entered that store was strong, but little of that strength derived from Hardiman's testimony that one of his passengers directed him to the Family Dollar when he picked them up. We thus can conclude that, even if error occurred, no *reversible* error occurred. See, *e.g.*, *People v. Montano*, 2017 IL App (2d) 140326, ¶¶ 137-38 (where the court could conclude that the asserted error would be harmless under the applicable standard, it did not need to decide whether it was error).

¶ 22    "A person commits burglary when without authority he or she knowingly enters *** a building *** with intent to commit therein a *** theft. 720 ILCS 5/19-1(a) (West 2018). The compelling evidence that defendant entered the store with intent to commit a theft was his behavior after he arrived at the store, not what he may have said in the cab on the way. He entered the store briefly, exited, told the driver to move the cab further from the entrance, and then reentered the

store. His brief entrance into the store would have allowed the jury to infer that he was casing it in preparation for the theft. His direction to the driver to move the cab is harder to interpret, but, in the context of his other actions, it could be understood as an attempt to keep the store's employees from spotting the cab. Defendant's actions once he entered the store for the second time were purposeful in a way that suggested that he had planned the theft in advance. The jury could reasonably infer that defendant acted as if to purchase candy because he wanted the cashier to open the cash drawer, and that he offered change to slow the transaction. Little of probative value was added by Hardiman's testimony that defendant or his companion told Hardiman to drive to the Family Dollar, since, absent that testimony, the jury would still have concluded that Hardiman drove to that location because he was directed by his passengers, not because he was indulging his own whims.

¶ 23    Because Hardiman's testimony that one of his passengers told him where to go was not a significant part of the evidence tending to show that defendant entered the Family Dollar with the intent to commit a theft, we conclude that no reasonable probability existed that the jury would have acquitted defendant if the trial court had excluded Hardiman's testimony. Moreover, because Hardiman's testimony about his passenger's directive was not significant, a limiting instruction on that testimony was unnecessary. Finally, we agree with the trial court (and the State on appeal) that the prosecution did not make use of the contested testimony in its rebuttal argument. But it makes no difference whether the jury might have understood the rebuttal argument to mention that one of the passengers directed Hardiman to drive to the store, because the jury would have inferred in any event that Hardiman drove to the store at his passengers' direction. Further, as we have explained, the evidence of defendant's intent when he entered the Family Dollar was not closely balanced.

¶ 24                                    III. CONCLUSION

¶ 25    For the reasons stated, we affirm defendant's conviction.

¶ 26    Affirmed.